UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

_____

RMG FINANCIAL MANAGEMENT LLC

**COMPLAINT**

v.

Case No.

JESSE GRANTHAM

And

ALL AMERICAN REFINERY

And

ISLAND L.P. GAS SERVICES, INC. D/B/A PROPANE MAN

_____

RMG Financial Management LLC by and through its attorneys The Keenan Law Firm alleges as follows:

PARTIES

1. RMG Financial Management LLC ("RMG") is a Wyoming limited liability company with its principal place of business located at 3123 Cloverbank Road, Hamburg, Erie County, New York, 14075.

2. RMG has two members, both of whom are residents of the state of Israel.

3. Defendant Jesse Grantham ("Grantham") is a resident of Hattiesburg, Mississippi with a place of business at 1318 Hardy St 2nd Floor, Hattiesburg, Mississippi 39401.

4. Defendant All American Refinery, Inc. ("AAR") is a Louisiana corporation with a principal place of business located at 1318 Hardy St 2nd Floor, Hattiesburg, Mississippi

1

39401.

5. Defendant Island L.P. Gas Services, Inc d/b/a Propane Man ("Island") is a Hawaii corporation with a principal place of business at 94-171 Leonui St, Waipahu, Hawaii.

## SUBJECT MATTER JURISDICTION

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy is greater than $75,000. The members of RMG are residents of the State of Israel and the Defendants are resident of Mississippi, Loiusiana, and Hawaii.

## VENUE

7. Venue is properly set in the Western District of New York pursuant to 28 U.S.C. 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PERSONAL JURISDCTION

8. There is personal jurisdiction over the Defendants pursuant to NY CPLR §302 because the Defendants (a) were doing business in the State of New York and (b) committed torts outside the State of New York which caused injury within the State of New York while the Defendants were doing and soliciting business within the State of New York.

## BACKGROUND

9. RMG is an international investment firm with offices in Tel Aviv, Israel and New York, U.S.A.

10. RMG is a Wyoming LLC.

11. As part of its operations, RMG invests in commodities to earn returns for its investors.

12. Consequently, the principals of RMG are seeking to invest or joint venture to drive those

investments.

13. Grantham was introduced to the Principals of RMG in September 2023.

14. Grantham represented that he was a U.S. veteran and that he was a shareholder and the principal of Defendant AAR and Defendant Island.

15. Grantham claimed AAR to be a disadvantaged, veteran owned corporation which was involved in the purchase and sale of oil.

16. AAR supposedly bid on government contracts to supply oil to U.S. government facilities such as Veterans Administration facilities.

17. Grantham and AAR wanted RMG to enter into a joint venture agreement to bring private investment money to AAR.

18. AAR wanted to do this so that it could bid on contracts to supply more and larger facilities.

19. To accomplish this goal, AAR needed more capital to purchase fuel to be able to service larger supply contracts.

20. On August 19, 2024, AAR, Island and RMG entered into a joint venture agreement (the "Agreement") under which RMG was to provide financing for AAR and Island to pay for supply contracts.

21. RMG set up a special, trust bank account with a major bank to facilitate operation of the Agreement.

22. Under the Agreement, the purchaser of the fuel under the fuel supply contracts would make a prepayment for the contracted purchase to RMG's trust account.

23. The money would remain in RMG's trust account until the fuel was delivered and bills of lading were endorsed by the intended recipient.

24. Upon confirmation of delivery, payment for fuel supply contracts would go directly from RMG to the fuel supplier.

25. RMG located investors who were ready to deliver precious stones to RMG.

26. The stones needed to be monetized either through loans or by sale.

27. One set of stones consisted of approximately 1,536 diamonds of various cuts and weights (the "Diamonds").

28. The Diamonds were assessed by a reputable licensed assessor at approximately $35 million.

29. They were owned by a non-profit organization in New York.

30. The other precious stones consisted of three uncut rubies (the "Rubies").

31. The Rubies were appraised at a value of $1.6 billion.

32. They were owned by a gentleman from Montreal.

33. Collectively the Diamonds and Rubies are referred to as the "Stones".

34. To facilitate the monetization, and pursuant to contract, ownership of the Stones was transferred to RMG.

35. At that time the Stones were physically stored at a facility in Irvine, California, Global Trust Depository, Inc.

36. At that time Grantham informed the principals of RMG that he had a bank officer at a major bank who would arrange a loan to monetize the stones at a loan to value ratio of 80%.

37. In order to facilitate the monetization, Grantham claimed that he needed to transfer the Stones to a facility in Los Angeles, California, 18 Karats Appraisers for a second appraisal.

38. In transferring the Stones Grantham incurred charges in excess of $300,000.

39. Additionally, RMG incurred costs in sending its representative to California from New York to supervise the transfer of the Stones at considerable expense.

40. Grantham did not pay any of these charges these charges and RMG must pay these costs in order to retrieve the stones from 18 Karats Appraisers.

41. Upon information and belief, Grantham took these actions as part of a scheme or artifice the steal the precious Stones.

42. In fact, there was no offer from a bank officer or major bank to grant a loan to monetize the stones.

43. Instead, Grantham took these actions in order to further his plan to convert the Stones to his own uses and defraud RMG.

44. At the same time as Grantham was taking his fraudulent actions regarding the Stones, Grantham suggested that RMG conduct a test of the commodity trading system.

45. Grantham said that he also was involved in the supply of propane and suggested the first trade occur in that commodity.

46. Grantham promised that the profit on the investment in propane would be $1 per gallon for each dollar invested.

47. Upon the first trade Grantham promised the return of the capital and the profit within one month.

48. Based upon Grantham's representations, RMG provided $368,227.83 to Grantham and AAR to purchase propane.

49. Grantham, AAR, and Island represented that they would return the principal and profits by October 5, 2024.

50. Grantham did not perform by October 5, 2024.

51. In fact, three months have now expired and neither Grantham, AAR nor Island have returned any of the $368,227.83 provided by RMG.

52. Three months have now expired, and no profits have been provided by Grantham, AAR, or Island.

53. Critically, Grantham, AAR, and Island have failed to account for any of the money provided by RMG and have provided no legitimate accounting of what was done with the money provided by RMG.

54. Grantham has repeatedly promised RMG's principals that he is wiring the money owed to them.

55. Grantham has made these claims on a daily basis.

56. Upon information and belief, Grantham used AAR and Island to convert the monies to his own uses.

57. Grantham intended directly to defraud RMG and its principals.

58. Grantham's actions have caused RMG to incur costs to pay its investors for the amounts that were converted by Grantham to his own uses.

59. RMG has suffered grievous financial damage through the actions of Grantham, AAR and Island.

COUNT I

<u>FRAUD</u>

60. Plaintiff repeats and realleges with the same force and effect as if fully set forth herein the allegations contained in paragraphs 1 through 59.

61. RMG had obtained precious Stones with a value in excess of $1.6 billion from its

investors.

62. Grantham stated that he had a banker and a major bank who were willing to monetize the Stones at a loan to value ratio of 80%.

63. As previously alleged, Grantham falsely claimed that the Stones need to be transferred to 18 Karat Appraisers to have a second appraisal done.

64. In fact, the original appraisal was sufficient, and no further appraisal was necessary or needed.

65. Additionally, there was no banker or a major bank which was willing to monetize the Stones.

66. These were lies told by Grantham in furtherance of his fraud.

67. Grantham took all these actions as part of a plan or artifice to attempt to convert the Stones to his own use through AAR and Island.

68. In the process of carrying out his scheme, Grantham incurred costs in excess of $300,000 which have to be paid by RMG to protect the Stones along with additional costs paid to its representative.

69. On account of the foregoing RMG has suffered damages in the amount of $350,000.

70. Further, at this same time, Grantham presented an opportunity to test the commodity trading system.

71. Grantham asked RMG to fund a test of the commodity trading system.

72. Grantham stated that he had an opportunity in the propane business.

73. Grantham stated that he would provide profits of $1 for each dollar invested.

74. In reliance on the statements of Grantham, RMG provided $368,227.83 to facilitate the first commodity trade.

75. Grantham, AAR, and Island took the $368,227.83 and failed to return the principal amount or to provide the promised profits within one month.

76. In fact, after three months Grantham and AAR failed to provide the return of any of the principal or promised profits.

77. Critically, Grantham and AAR failed to account for the monies or how it was invested.

78. In fact, Gratham did not invest the money in any commodity trades.

79. Grantham did not use the $368,227.83 for the purposes of the Agreement.

80. Grantham, upon information and belief, converted the $368,227.83 to his own uses.

81. On account of the foregoing, RMG has suffered damages in the amount of $368,227.83.

82. Grantham, AAR and Island failed to pay the promised profits to RMG.

83. Despite the fraud of Grantham, AAR and island, RMG has to pay the promised profits to its investors.

84. On account of the foregoing, RMG has been damaged in the amount of $500,000.

85. Therefore, RMG is entitled to judgment against Grantham, AAR and Island in the amount of $1,218,227.83 along with Punitive damages, costs, and statutory interest.

## COUNT II

### FRAUDULENT INDUCEMENT

86. Plaintiff repeats and realleges with the same force and effect as if fully set forth herein the allegations contained in paragraphs 1 through 85.

87. As previously alleged, RMG had obtained precious Stones with a value in excess of $1.6 billion from its investors.

88. Grantham stated that he had a banker and a major bank who were willing to monetize the Stones at a loan to value ratio of 80%.

89. As previously alleged, Grantham falsely claimed that the Stones need to be transferred to 18 Karat Appraisers in order to have a second appraisal done.

90. In fact, the original appraisal was sufficient and no further appraisal was necessary or needed.

91. Additionally, there was no banker or a major bank which was willing to monetize the Stones.

92. Grantham took all these actions as part of a plan or artifice to attempt to convert the Stones to his own use through AAR and Island.

93. In the process of carrying out his scheme, Grantham incurred costs in excess of $300,000 which have to be paid by RMG to protect the Stones and to pay its agent.

94. On account of the foregoing, RMG has suffered damages in the amount of $3500,000.

95. Further, at this same time, Grantham presented an opportunity to test the commodity trading system.

96. Grantham asked RMG to fund a test of the commodity trading system.

97. Grantham stated that he had an opportunity in the propane business.

98. Grantham stated that he would provide profits of $1 for each dollar invested.

99. In reliance on the statements of Grantham, RMG provided $368,227.83 to facilitate the first commodity trade.

100. Grantham, AAR and Island took the $368,227.83 and failed to return the principal or to provide the promised profits within one month.

101. In fact, after three months Grantham, AAR, and Island failed to provide the return of any of the principal or promised profits.

102. Critically, Grantham and AAR failed to account for the monies or how it was

invested.

103. In fact, Grantham did not invest the money in any commodity trades.

104. Grantham did not use the $368,227.83 for the purposes of the Agreement.

105. Grantham, upon information and belief, converted the $368,227.83 to his own uses.

106. On account of the foregoing, RMG has suffered damages in the amount of $368,227.83.

107. Grantham, AAR, and Island failed to pay the promised profits to RMG.

108. Despite the fraud of Grantham, AAR, and Island, RMG has to pay the promised profits to its investors.

109. On account of the foregoing, RMG has been damaged in the amount of $500,000.

110. Grantham made numerous false, fraudulent statements to the principals of RMG to induce them to provide him with money with no intent to repay those funds or to account for them.

111. Therefore, RMG is entitled to judgment against Grantham and AAR in the amount of $1,218,227.83 along with Punitive damages, costs, and statutory interest.

## COUNT III

## CONVERSION

112. Plaintiff repeats and realleges with the same force and effect as if fully set forth herein the allegations contained in paragraphs 1 through 111.

113. As previously alleged, Grantham presented an opportunity to test the commodity trading system.

114. Grantham asked RMG to fund a test of the commodity trading system.

115. Grantham stated that he had an opportunity in the propane business.

116. Grantham stated that he would provide profits of $1 for each dollar invested.

117. In reliance on the statements of Grantham, RMG provided $368,227.83 to facilitate the first commodity trade.

118. Grantham, AAR, and Island took the $368,227.83 and failed to return the principal or to provide the promised profits by October 5, 2024.

119. In fact, after three months Grantham, AAR, and island failed to provide the promised return of any of the principal amount or promised profits.

120. Critically, Grantham and AAR failed to account for the money or how it was invested.

121. In fact, Grantham did not invest the money in any commodity trades.

122. Grantham did not use the $368,227.83 for the purposes of the Agreement.

123. Grantham, upon information and belief, converted the $368,227.83 to his own uses.

124. On account of the foregoing, RMG has suffered damages in the amount of $368,227.83.

125. Grantham and AAR failed to pay the promised profits to RMG.

126. Despite the fraud of Grantham, AAR, and Island, RMG is obligated to pay the promised profits to its investors.

127. On account of the foregoing RMG has been damaged in the amount of $500,000.

128. Grantham made numerous false, fraudulent statements to the principals of RMG to induce them to provide him with money with no intent to repay those funds or to account for them.

129. Therefore, RMG is entitled to judgment against Grantham, AAR, and Island in the amount of $868,228.83 along with Punitive damages, costs, and statutory interest along with punitive damages.

## COUNT IV

## BREACH OF CONTRACT

130. Plaintiff repeats and realleges with the same force and effect as if fully set forth herein the allegations contained in paragraphs 1 through 129.

131. As previously alleged, the RMG, AAR, and Island entered into the Agreement on August 19, 2024.

132. Under the Agreement, the parties were to share profits which were made by trading in fuel commodity contracts.

133. As previously alleged, Grantham requested that the Plaintiff and Defendants do a test of the commodity trading which they planned to do.

134. Grantham claimed he was going to purchase propane for the test of the commodity trading.

135. In order to do the test, Grantham requested that RMG provide funds in the amount $368,227.83

136. RMG provided funds which had been entrusted to it by their investors in the amount of $368,227.83

137. Grantham, AAR, and Island were contractually obligated to invest the funds provided by RMG in the fuel trading business.

138. Grantham, AAR, and island were contractually obligated to provide profits on the

$368,227.83 to RMG.

139. Grantham stated that the profits would be $1 for each trade on each dollar invested.

140. Grantham stated that the invested capital plus profit would be returned by October 5, 2024.

141. Grantham, AAR, and Island failed to make any payments of principal or profit as of December 5, 2024.

142. Additionally, Grantham, AAR, and Island failed to provide detailed reports as contractually required for each and every trade.

143. In fact, Grantham, AAR, and Island failed to provide any reports of the trades.

144. All these actions constituted breaches of the Agreement on the part of Grantham, AAR, and Island.

145. On account of the foregoing RMG has been damaged in the amount of $1,218,227.83.

146. Therefore, RMG is entitled to damages in the amount of $1,218,227.83 plus costs and statutory interest.

## COUNT V

### TEMPORARY AND PERMANENT INJUNCTION

147. Plaintiff repeats and realleges with the same force and effect as if fully set forth herein the allegations contained in paragraphs 1 through 146.

148. RMG's investors had provided RMG with precious Stones which have a value in excess of $1.6 billion.

149. In order to employ the Stones to facilitate the commodity trading business, RMG

would have to monetize the Stones either through a sale or a loan.

150. As previously alleged, Grantham developed a scheme or artifice to convert the Stones to his own uses.

151. Grantham stated that he had a banker at a major bank who would provide a loan with a loan to value ratio of 80%.

152. In fact, upon information and belief there was no such banker, and no major bank was involved.

153. These were simply fraudulent representations of Grantham, AAR, and Island.

154. Instead, Grantham, AAR, and Island intended to take possession of the Stones and convert them to their own uses.

155. When RMG discovered the acts of Grantham, AAR, and Island, it took certain steps to protect the Stones.

156. However, it is believed that Grantham's financial condition is so dire that he will still attempt to convert the Stones to his own uses.

157. Consequently, RMG is requesting a temporary and permanent injunction from this Court enjoining Grantham, ARR, and Island from taking possession of the Stones, attempting to take possession of the Stones, or interfering in any way with the exclusive possession, ownership of and title to the Stones by RMG.

WHEREFORE, RMG Financial Management LLC requests judgement against Jesse Grantham, All American Refinery, Inc. and Island L.P. Gas Services, Inc. d/b/a Propane Man as follows:

    a. On Count I, monetary damages in the amount of $1,218,227.83; and

    b. On Count II, monetary damages in the amount of $1,218,227.83; and

    c. On Count III, monetary damages in the amount of $868,228.83; and

    d. On Count IV, monetary damages in the amount of $1,218,227.83; and

    e. On Count V, a temporary and permanent injunction enjoining Jesse Grantham, All American Refinery and Island L.P. Gas Services, Inc. d/b/a Propaneman from taking possession of the Stones, attempting to take possession of the Stones, or interfering in any way with the exclusive possession, ownership of and title to the Stones by RMG; along with,

    f. Statutory Interest, Costs and Disbursements.

December 3, 2024

                                                                   ___/S/_ John J. Keenan_____