UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| RMG FINANCIAL MANAGEMENT LLC,<br><br>                              Plaintiff,<br>      v.<br><br>JESSE GRANTHAM,<br>ALL AMERICAN REFINERY, and<br>ISLAND L.P. GAS SERVICES INC., doing<br> Business as Propane Man,<br><br>                              Defendants. | **REPORT**<br>**and**<br>**RECOMMENDATION**<br><br>**24-CV-1180-JLS-LGF** |

_____

APPEARANCES:        KEENAN LAW FIRM
                               Attorneys for Plaintiff
                               JOHN JAMES KEENAN, of Counsel
                               3123 Cloverbank Road
                               Hamburg, New York  14075

## JURISDICTION

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on April 11, 2025, for all pretrial matters including preparation of a report and recommendation on dispositive motions. (Dkt. 14).  The matter is presently before the court on Plaintiff's motion for default judgment (Dkt. 13), filed April 10, 2025.

## BACKGROUND

Plaintiff RMG Financial Management LLC ("Plaintiff" or "RMG"), commenced this action on December 3, 2024, alleging fraud and breach of contract against Defendants Jesse Grantham ("Grantham"), All American Refinery ("AAR"), and Island L.P. Gas Services Inc., doing business as Propane Man ("Island") (together, "Defendants").

Plaintiff's claims are based on an alleged series of failed business transactions into which RMG maintains it was fraudulently induced by Defendants who never intended to fulfill their contractual obligations.

Jurisdiction is based on diversity.  Plaintiff is a Wyoming limited liability company with its principal place of business in Hamburg, New York, and another office in Tel Aviv, Israel.  RMG has two board members, both of whom are residents of Israel.  Grantham is a resident of Mississippi and is both a shareholder and the principal of Defendants AAR and Island.  AAR is a Louisiana corporation with its principal place of business in Mississippi.  Island is a Hawaii corporation with its principal place of business in Hawaii.  Plaintiff asserts four claims for relief including fraud, Complaint, Count 1 ("fraud claim"), fraudulent inducement, *id*., Count 2 ("fraudulent inducement claim"), conversion, *id*., Count 3 ("conversion claim"), breach of contract, *id*., and Count 4 ("breach of contract claim"), and also seeks injunctive relief, *id*., Count 5 ("injunctive relief request").

Affidavits of service filed in this action establish that Defendants Grantham and AAR were each served with a copy of the summons and complaint on December 12, 2024, Dkt. 7 (affidavit of service on Grantham); Dkt. 8 (affidavit of service on AAR), and on Island on December 10, 2024, Dkt. 9.  On January 8, 2025, Plaintiff requested entry of default against all Defendants, Dkt. 11, asserting that no Defendant had appeared, answered, or otherwise defended this action and the time in which to do so had elapsed.  Declaration [of John J. Keenan, Esq.] in Support of Request for Entry of Default (Dkt. 11-1), ¶¶ 4-5.  On January 16, 2025, the Clerk of Court entered default against Defendants (Dkt. 12).

On April 11, 2025, Plaintiff filed the instant motion for default judgment (Dkt. 13) ("Plaintiff's motion"), attaching the Declaration of Rami Michaeli (Dkt. 13-1) ("Michaeli Declaration"), a proposed Judgment by Default (Dkt. 13-2), and a Certificate of Service establishing copies of Plaintiff's motion and Michaeli Declaration were served by U.S. Mail on each Defendant (Dkt. 13-3).  A Text Order entered June 2, 2025 (Dkt. 16) ("Text Order"), set June 17, 2025 as the deadline for Defendants to respond to Plaintiff's motion for default judgment; copies of the Text Order were mailed to each Defendant at the addresses of record.  Dkt. 16.  The copies of the Text Order were not returned as undeliverable but, to date, no Defendant has appeared in this action nor responded to Plaintiff's motion for default judgment.

Oral argument was deemed unnecessary.

## **FACTS**[1]

Plaintiff, RMG, an international investment firm with offices in Tel Aviv, Israel and New York, invests in commodities to earn financial returns for its investors.  Plaintiff has two principals ("RMG's principals"), including Rami Michaelis ("Michaelis"),[2] both located in Israel.  In September 2023, RMG's principals were introduced to Defendant Grantham who represented he was a shareholder and principal of Defendants AAR and Island.  Grantham described AAR as a disadvantaged, veteran-owned corporation involved in the purchase and sale of oil including bidding on government contracts to

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

[2] Plaintiff's other principal is not identified.

3

supply fuel[3] to U.S. government facilities such as Veterans Administration facilities. On August 19, 2024, Plaintiff entered into a joint venture agreement ("the Agreement") pursuant to which Plaintiff would provide financing for AAR and Island to pay for fuel supply contracts ("fuel supply contracts")[4] with Plaintiff setting up a special trust bank account ("the trust account") to handle transactions in connection with the Agreement. Purchasers of fuel under the fuel supply contracts were to remit prepayment for the contracted purchases to the trust account where the funds would remain until the fuel was delivered and bills of lading were endorsed by the intended recipients, after which RMG would release the funds for payment of the fuel supply contracts directly to the fuel supplier.

Separate from the Agreement between Plaintiff and AAR and Island, Plaintiff located investors[5] who were ready to deliver precious stones, including diamonds and rubies ("the stones"), to RMG, but the stones first needed to be monetized, *i.e.*, converted to their cash value either through a sale or a loan.[6] Pursuant to a "contract,"[7] ownership of the stones was transferred to RMG to facilitate monetization while the stones remained physically stored at Global Trust Depository, Inc. ("Global Trust"), located in Irvine, California. Complaint ¶¶ 34-35. Grantham informed RMG's principals

---

[3] The court notes the Complaint refers to the parties contracting to supply "oil" and "fuel" and it is not clear that all the fuel supply contracts would be for fuel oil.

[4] No copy of the Agreement executed by the parties is in the record.

[5] The investors are not identified other than an averment that "[t]hey [the stones] were owned by a gentleman from Montreal.

[6] A licensed appraiser appraised the value of the diamonds at $ 35 million and the rubies at $ 1.6 billion.

[7] No copy of the contract is in the record nor does Plaintiff allege the identity of the parties to this contract.

4

that Grantham "had a bank officer at a major bank" who would arrange a loan to monetize the stones at an 80% loan-to-value ("LTV") ratio, *id*. ¶ 36, but Grantham first needed to transfer the stones to a different facility for a second appraisal, specifically, to 18 Karats Appraisers ("18 Karats") in Los Angeles, California.  The cost to transfer the stones to 18 Karats from Global Trust exceeded $ 300,000 ("the transfer costs"), which was charged to, but not paid by, Grantham, and RMG incurred additional costs in sending representatives to California from New York to supervise the transfer of the stones.  Because Grantham never paid the transfer costs, RMG must now pay the transfer costs to have the stones released from 18 Karats.  According to Plaintiff, there never was any offer from a bank officer to issue a loan to monetize the stones, and Grantham's statements to that effect were fraudulent and intended to defraud RMG by converting the stones to Grantham's personal use.

While the transactions involving the stones were occurring, Grantham suggested that "RMG conduct a test of the commodity trading system," Complaint ¶ 44, with Grantham stating "he was also involved in the supply of propane and suggested the first trade occur in that commodity." ("the propane investment").  *Id*. ¶ 45.  Grantham "promised" RMG's profit for the propane investment would be $ 1 per gallon of propane for each dollar invested which would be paid within one month of the investment.  *Id*. ¶¶ 46-47.  RMG sent $ 368,227.83 ("the investment principal") to Grantham and AAR for the propane investment for which Defendants represented Plaintiff would receive a return of principal and profits by October 5, 2024.  More than three months after October 5, 2024, Plaintiff had yet to receive a return of any of the propane investment principal or any profits, and Defendants have failed to account for any of the principal or

5

to provide any "legitimate account of what was done with the money provided by RMG." *Id*. ¶ 53. Grantham, on a daily basis, promised the RMG Principals that he would wire the money owed to RMG, but has yet to do so.

Plaintiff maintains Grantham used AAR and Island to convert the monies owed to Plaintiff to Grantham's personal use and intended to defraud RMG and RMG Principals. Plaintiff claims Grantham's actions caused RMG to incur costs to pay RMG's investors for the amounts Grantham converted to his personal use.

## DISCUSSION

### 1. Default Judgment

Plaintiff moves for default judgment against all Defendants and an award of damages, including lost principal, lost profits, interest, and attorney fees for a total judgment of $ 2,723,490.69. Plaintiff's motion is supported by the averments of RMG Principal Michaelis. Defendants have not opposed Plaintiff's motion.

Default judgments are governed by Fed.R.Civ.P. 55 which "provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed.R.Civ.P. 55(a). Only after default has been entered can a party seek a default judgment. *See* Fed. R. Civ. P. 55(b); *United States v. $25,348 U.S. Currency*, 2022 WL 16755844, at *2 (W.D.N.Y. Aug. 23, 2022) ("Entry of a party's default pursuant to Rule 55(a) is a mandatory prerequisite for entry of a default judgment pursuant to Rule 55(b)"). It is the second step, entry of a

default judgment pursuant to Rule 55(b) that "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). Here, the first step was satisfied with the Clerk of Court's entry of default on January 16, 2025 (Dkt. 12), and the court thus must consider whether the record supports entry of default judgment pursuant to Rule 55(b) as Plaintiff requests.

By failing to answer the Complaint or to otherwise oppose Plaintiff's claims, Defendants are deemed to have admitted the Complaint's factual allegations for entry of a default judgment under Rule 55(b). *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("*Greyhound Exhibitgroup*") ("a party's default is deemed to constitute a concession of all well pleaded allegations of liability."). *See Mickalis Pawn Shop, LLC*, 645 F.3d at 128 (a court's entry of default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."). Nevertheless, "[a] court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment; rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015) ("*Bricklayers*"). In other words, upon entry of the default, "[t]he Court must then determine 'whether the unchallenged facts constitute a legitimate cause of action.'" *Freedom Mortgage Corp. v. Bullock*, 2023 WL 5266343, at * 3 (E.D.N.Y. Aug. 4, 2023) ("*Bullock*") (quoting 10A

7

Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.")).  Despite a defendant's admitting all well-pleaded facts in the complaint by virtue of default, a district court "need not agree that the alleged facts constitute a valid cause of action," and may decline to enter a default judgment on that ground.  *Mickalis Pawn Shop, LLC*, 645 F.3d at 137. Significantly, prior to entering default judgment, "a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'" *Id.* (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).  "The decision whether to enter default judgment is committed to the district court's discretion . . . ." *Greathouse v. JHS Sec., Inc.*, 784 F.3d 105, 116 (2d Cir. 2015). If liability is established to support default judgment, the court "must then determine the proper amount of damages, which typically requires evidentiary support."  *Irmarfer U.S. LLC v. C4 Live*, 2024 WL 4502295, at *2 (W.D.N.Y. Oct. 16, 2024) ("*Irmarfer*") (citing *Bricklayers*, 779 F.3d at 187).

2. **Liability**

Before a district court enters a default judgment, it must determine whether the allegations in a complaint establish the defendants' liability as a matter of law.  See *Finkel*, 577 F.3d at 84.  A default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 Fed.Appx. 111, 113 (2d Cir. 2015).  The court

8

thus first discusses whether Plaintiff's allegations, taken as true, establish Defendants' liability as a matter of law with regard to any of the five claims for relief.

"The Court cannot simply accept at face value that a defendant is liable. Rather, 'judgment against a defaulting party should be granted only after careful examination of the moving party's claim by the district court. . . . Indeed, a defendant's default does not in itself warrant a court in entering a default judgment because there must be a sufficient basis in the pleadings for the judgment entered.'" *Irmarfer*, 2024 WL 4502295, at *2 (quoting *Bianco v. Seaway Indus. Services, Inc.*, 2004 WL 912916, at *1 (W.D.N.Y. Apr. 1, 2004) (internal citations and quotations omitted); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993). It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases). Further, a federal court sitting in diversity, as in the instant action, must apply the substantive law of the state in which it sits. *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 893 (2d Cir. 2019) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1983)). The court thus considers whether Plaintiff has sufficiently alleged each of the asserted claims for relief to plausibly state the causes of action asserted against Defendants under New York law. *Gesualdi*, 629 Fed.Appx. at 113 (vacating default judgment granted by the district court because the district court failed to discuss whether the complaint's allegations were sufficient to plausibly state claims for the relief sought). *See Flawless Style LLC v. Saadia Group LLC*, 2025 WL 2780121, at * 4 (S.D.N.Y. Sept. 29, 2025) (when considering a motion for default judgment, "[t]he Court evaluates the legal sufficiency of the non-defaulting

party's claims using the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), 'aided by the additional step of drawing inferences in the movant's favor.'" (quoting *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019)).

### A. Breach of Contract

Under New York law, "there are four elements to a breach of contract claim: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (internal quotation marks omitted). Relevantly, "[a] breach of contract claim 'that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal.'" *DeMarle v. Videk, Inc.*, 2023 WL 4138880, at *6 (W.D.N.Y. June 20, 2023) (quoting *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009)). Accordingly, before the court considers whether the allegations of the Complaint sufficiently plead a breach of contract, the court must determine whether the Complaint sufficiently alleges the existence of an enforceable contract between the parties.

"'To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract.'" *Waziry v. Fnu*, 2024 WL 2702205, at *6 (W.D.N.Y. May 24, 2024) (quoting *Fuji Photo Film U.S.A., Inc.*, 669 F. Supp. 2d at 412, and citing *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)). Here, the

10

Complaint's allegations regarding the Agreement fail to plausibly allege the Agreement was an enforceable contract and, as such, the Complaint also fails to establish a breach of contract.

In particular, the Complaint's allegations regarding the Agreement are brief and conclusory, consisting only of allegations that on August 19, 2024, RMG, AAR and Island "entered into a joint venture agreement . . . under which RMG was to provide financing for AAR and Island to pay for supply contracts."  Complaint ¶ 20.  "Under the Agreement, the purchaser of the fuel under the fuel supply contracts would make a prepayment for the contracted purchase to RMG's trust account."  *Id*. ¶ 22.  "The money would remain in RMG's trust account until the fuel was delivered and bills of lading were endorsed by the intended recipient."  *Id*. ¶ 23.  "Upon confirmation of delivery, payment for fuel supply contracts would go directly from RMG to the fuel supplier."  *Id*. ¶ 24.

Plaintiff's allegations that Plaintiff and Defendants "entered into a joint venture agreement," Complaint ¶ 20, "lack the requisite specificity as to the circumstances of such an agreement."  *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 521 (S.D.N.Y. 2017) (dismissal appropriate where plaintiff alleged, *inter alia*, that parties agreed to "work together"). "[F]or a contract to be valid, the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty."  *Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 439 (S.D.N.Y. 2023) (citation omitted).  There must be evidence of a meeting of the minds on all materials terms and a standard by which a party can know its contractual obligations and a court can enforce them.  *See Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288-89 (2d Cir. 2019) ("It is a basic tenet of contract law that, in order to

11

be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.' The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." (citations omitted)).

Here, not only is no copy of the Agreement attached to the Complaint, but the Complaint's failure to allege whether the alleged Agreement was oral or written deprives the court of the ability to ascertain "'whether or how'" Defendants may have "'assented to the contract.'" *Waziry*, 2024 WL 2702205, at *6 (quoting *Fuji Photo Film U.S.A., Inc.*, 669 F. Supp. 2d at 412). Nor is there any indication as to whether the Agreement is an open-ended contract or has an end date, or any provision regarding how RMG would provide financing for the asserted supply contracts or the timing of such financing. The Complaint also fails to explain what approval was needed for other considerations such as the fuel supply contracts which raises questions about the need to vet the purported fuel suppliers, as well as whether the fuel supply contracts were limited to any type of fuel, domestic or international sources, insurance concerns, and the conditions under which title to the fuel would transfer. The Complaint's allegations are simply too sparse to establish the existence of an enforceable contract. Because Plaintiff has failed to plausibly allege the existence of an enforceable contract, default judgment cannot be granted on Plaintiff's breach of contract claim. *Irmarfer*, 2024 WL 4502295, at *3-4.

Plaintiff's motion therefore should be DENIED as to the breach of contract claim.

### B.   Fraud

To state a claim for fraud under New York law, "a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the

12

plaintiff and resulting injury." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (quotations, citation, and alteration omitted). Further, pursuant to Fed.R.Civ.P. 9(b) ("Rule 9(b)"), a claim for fraud must be pleaded with particularity. In particular, Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290 (citation omitted). In the instant case, Plaintiff's fraud claim is based on the asserted transaction involving monetization of the stones and the propane investment.

With regard to the stones, Plaintiff alleges that after obtaining the stones valued in excess of $ 1.6 billion, Grantham's statements that Grantham "has a banker and a major bank who were willing to monetize the Stones at a loan to value ratio of 80%," Complaint ¶ 62, but that such monetization required the stones be transferred to 18 Karats from Global Trust for a second appraisal, *id*. ¶ 63, were lies as Grantham had never located any banker or major bank which was willing to make a loan to monetize the loan, *id*. ¶¶ 65-67, and that Plaintiff, as a result of relying on such lies, incurred expenses in excess of $ 300,000 in arranging for and supervising the transfer of the stones to 18 Karats. *Id*. ¶¶ 68. Plaintiff, however, fails to allege when and where Grantham allegedly made the fraudulent statements, a requirement to state a plausible claim for fraud. *Lerner*, 459 F.3d at 290. Plaintiff thus has not stated a claim for fraud based on the stones.

With regard to the propane investment, Plaintiff alleges that Grantham "presented an opportunity to test the commodity trading system," Complaint ¶ 70, and "asked RMG to fund a test of the commodity trading system." *Id*. ¶ 71. Grantham

reported he "had an opportunity in the propane business," *id*. ¶ 72, and that Grantham "would provide profits of $ 1 for each dollar invested." *Id*. ¶ 73. Plaintiff alleges it relied on such statements and "provided $ 368,227.83 to facilitate the first commodity trade," *id*. ¶ 74, which Defendants "took" and then "failed to return the principal amount or to provide the promised profits within one month," *id*. ¶ 75, and the money has never been returned nor an accounting for the money provided. *Id*. ¶¶ 76-77. According to Plaintiff, Grantham took the money intended for the propane investment for his own personal use. *Id*. ¶¶ 9-80. Again, Plaintiff fails to allege when and where the allegedly fraudulent statements regarding the propane investment were made. Nor does Plaintiff allege how the $ 368,227.83 was "provided to facilitate the first commodity trade." *Id*. ¶ 74.[8] Accordingly, Plaintiff's allegations regarding the propane investment fall short of Rule 9(b)'s particularly requirement, and Plaintiff has failed to state a claim for fraud based on such statements.

Plaintiff's motion for default judgment thus should be DENIED as to the fraud claim.

### C.   Fraudulent Inducement

Under New York law, "'[t]he elements of fraudulent inducement are substantially the same as those for common law fraud.'" *Green Star Energy Sols., LLC v. Edison Props., LLC*, 2022 WL 16540835, at *5 (S.D.N.Y. Oct. 28, 2022) (quoting *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 297–98 (S.D.N.Y. 2011) (citing *Braddock v. Braddock*, 871 N.Y.S.2d 68, 70 (1st Dep't 2009))). *See Fax*

---

[8] The court notes that RMG principal Michaelis states that "[i]n reliance on Granthan's statements, RMG invested $ 368,227.83 on September 13, 2024, Michaelis Declaration ¶ 12, and that "[a] copy of the wire transfer to Grantham is attached as Exhibit 'A'." *Id*. ¶ 13. Nevertheless, no copy of the wire transfer is attached as Exhibit A to the Michaelis Declaration nor is found elsewhere in the record.

14

*Telecommunicaciones Inc. v. AT & T*, 138 F.3d 479, 490 (2d Cir. 1998) (considering whether the plaintiff had alleged claims for fraud and fraudulent inducement) (citing, *inter alia*, *Turtur v. Rothschild Registry Int'l, Inc.,* 26 F.3d 304, 310 (2d Cir.1994) (enumerating elements of common law fraud under New York law); *Stone v. Schulz,* 647 N.Y.S.2d 822, 823 (2nd Dept.1996) (same for fraudulent inducement). Accordingly, because Plaintiff has failed to state a claim for fraud, Plaintiff has also failed to plausibly allege a claim for fraudulent inducement and Plaintiff's motion for default judgment on such claim should be DENIED.

### D. Conversion

In New York, a cause of action for common law conversion is defined as "the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Vigilant Insurance Company of America v. Housing Authority of the City of El Paso, Texas,* 660 N.E.2d 1121, 1126 (N.Y.1995) (quoting *Employers' Fire Ins. Co. v. Cotten,* 156 N.E. 629, 630 (N.Y.1927)). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. New York Organ Donor Network, Inc.,* 860 N.E.2d 713, 717 (N.Y.2006) (citing cases). Further, when the defendant's original possession of the alleged converted property is lawful, conversion does not occur until the defendant refuses to return the property upon demand, or disposes of the property, in which case no demand is necessary. *Johnson v. Gumer,* 464 N.Y.S.2d 318, 319 (4th Dep't 1983) (citing *MacDonnell v. Buffalo, Loan, Trust & Safe Deposit Co.,* 85 N.E. 801,

803 (N.Y. 1908)). In the instant case, the allegations of the Complaint fail to plausibly allege a cause of action for conversion.

Specifically, Plaintiff alleges that "RMG provided $ 368,227.83 to facilitate the first commodity trade [the propane investment]," Complaint ¶ 117, which Defendants "took" and failed to return along with the promised profits by October 5, 2024. *Id*. ¶ 118. Plaintiff further alleges that "Grantham and AAR failed to account for the money or how it was invested," *id*. ¶ 120, and "Grantham did not invest the money in any commodity trades," *id*. ¶ 121, or use the money "for the purposes of the Agreement," *id*. ¶ 122, but instead "converted the $ 368,227.83 to his own uses. *Id*. ¶ 123. Nowhere within these allegations, however is there any assertion that Plaintiff ever demanded Grantham and Defendants return the investment principal and promised profits, or that Defendants disposed of the money. *Johnson v. Gumer,* 464 N.Y.S.2d 318, 319 (4th Dep't 1983). Because Plaintiff has failed to plausibly allege a claim for conversion, Plaintiff's motion seeking default judgment on the conversion claim should be DENIED.

### E. Injunctive Relief and Damages

Because Plaintiff has failed to sufficiently allege any valid claim for relief, Plaintiff is not entitled to a default judgment against Defendants and the court does not address Plaintiff's request for injunctive relief or for damages. See *Jean-Baptiste v. United States Dep't of Just.*, 2023 WL 2648152, at *4 (S.D.N.Y. Mar. 27, 2023) (denying request for preliminary injunction where the complaint failed to sufficiently allege any claim for relief), *aff'd*, 2024 WL 1193062 (2d Cir. Mar. 20, 2024); *Friedman v. Cap. Accts., LLC*, 2020 WL 9422948, at *6 (S.D.N.Y. Apr. 21, 2020) (recommending

16

damages be denied where denial of default judgment was also recommended), *report and recommendation adopted*, 2021 WL 1721665 (S.D.N.Y. Apr. 30, 2021).

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion for default judgment (Dkt. 13) should be DENIED and the Complaint should be DISMISSED without prejudice and with leave for Plaintiff to file, **within 30 days**, and serve an amended complaint that states a claim for relief.[9]

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   December 2, 2025
         Buffalo, New York

---

[9] Any amended complaint filed by Plaintiff would need to be served on Defendants. *See Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F.Supp.2d 1359, 1360 & n. 2 (S.D. Ga. 2024) (granting, after denying the plaintiff's motion for default judgment because the complaint failed to state a claim, the plaintiff's motion for leave to file an amended complaint, directing that such complaint be filed and served, as required by Fed.R.Civ.P. 5, within 120 days).

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and to the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    December 2, 2025
         Buffalo, New York